**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TV Tokyo Corp., | |
| *Plaintiff,* | |
| | No. 24 CV 8964 |
| v. | |
| | Judge Lindsay C. Jenkins |
| Yiwu Wenzan Apparel Co., Ltd., | |
| *Defendant.* | |

**ORDER**

Plaintiff TV Tokyo Corporation filed this case against many e-commerce storefronts alleging false designation of origin in violation of 15 U.S.C. § 1125(a); copyright infringement in violation of 17 U.S.C. § 501(a); and a state law claim for violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1. [Dkt. 1.][1] The case remains pending only as to Defendant No. 224 Yiwu Wenzan Apparel Co., Ltd., a sole proprietorship owned by Jing Zhu. Yiwu Wenzan proceeds in this case *pro se.*

The parties have filed cross-motions for summary judgment. As discussed below, having considered Yiwu Wenzan's personal jurisdiction arguments under the Rule 12(b) standard of review, the court concludes that the case must be dismissed without prejudice for lack of personal jurisdiction, or alternatively, for insufficient service of process.

## I.    Factual Background

The court draws on the parties' Local Rule 56.1 statements to recount the facts at issue, which are undisputed except where otherwise noted. [Dkts. 213, 214, 215.][2]

---

[1]    Citations to docket filings generally refer to the electronic pagination supplied by CM/ECF, which may not be consistent with page numbers in the underlying documents.

[2]    Plaintiff filed a Rule 56.1 statement, and as required by Rule 56.2, Yiwu Wenzan was served with a "Notice to Unrepresented Litigant Opposing Summary Judgment." [Dkt. 196.] In its response, Yiwu Wenzan frequently attempts to dispute asserted facts by stating that it "lacks sufficient knowledge or information to admit or deny this allegation and therefore denies the same," by stating that Plaintiff has not produced a licensing arrangement (including with Shueisha, Inc.), or by simply stating that the fact is disputed without citing to contrary evidence in the record. Other times, Yiwu Wenzan only disputes some aspects of the asserted fact and ignores others. [*See generally* Dkt. 215.] To the extent Yiwu Wenzan has failed to properly dispute any of Plaintiff's asserted facts, they are deemed admitted for purposes of summary judgment to the extent that they are supported by the record. *See* LR 56.1(e)(3).[2] ("Asserted facts may be deemed admitted if not controverted with specific

Plaintiff is a "leading Japanese content producer and broadcaster of movies and videos with particular strength in animation." [Dkt. 215, ¶ 1.] It exclusively manages licensing NARUTO-branded products and services worldwide, having received authorization from the registered owner of the NARUTO mark. [*Id.*, ¶ 2.]

NARUTO is a best-selling Japanese comics (or manga series), written and illustrated by Masashi Kishimoto. [*Id.*, ¶¶ 3-4.] 250 million copies of the NARUTO manga series have been circulated worldwide in 46 countries and regions. This includes English translations that have appeared in well-known publications. [*Id.*] NARUTO-branded products have expanded to include toys, games, stationery, apparel, accessories, and other household commodities. [*Id.*, ¶ 6.] As a result of its licenses, Plaintiff is the official source of NARUTO products. [*Id.* at ¶ 7.]

It's undisputed that Plaintiff owns U.S. Copyright Reg. No. PA0002276002 (the "NARUTO Copyright") and that Plaintiff has expended substantial time, money, and resources developing, advertising and otherwise promoting that Copyright. [Dkt. 215, ¶ 12–13; Dkt. 195–3.] Included within the NARUTO Copyright is the motion picture "*NARUTO 353: The Tale of Jiraiya the Gallant*." [Dkt. 213, ¶ 16.] An image of a "red cloud" appears on the characters' wardrobes in *The Tale.* [Dkt. 214, ¶ 3.]

Plaintiff maintains that Yiwu Wenzan used images encompassed by its NARUTO Copyright in products that Yiwu Wenzan marketed and offered for sale, including unauthorized counterfeit apparel. One such product is a baseball hat like this one with a purported "red cloud" image on the crown.



[*Id.*, ¶¶ 18, 20, 32; Dkt. 195-4 at 1.]

Jing Zhu is the sole proprietor and sales manager of Yiwu Wenzan and its website, which has operated on the Alibaba platform for eleven years. [Dkt. 215, ¶¶ 22, 24, 39.] Yiwu Wenzan sells a variety of items including hats, gloves, scarves, and accessories and ships products around the globe, including baseball hats to Chicago, Illinois. [*Id.*, ¶¶ 23, 26.]

---

citations to evidentiary material."); *Keeton v. Morningstar*, Inc., 667 F.3d 877, 884 (7th Cir. 2012) (where that party has failed to create a genuine dispute, the fact is deemed admitted).

Jing Zhu uploaded the red cloud image depicted above to Yiwu Wenzan's Alibaba site. [*Id.* ¶ 30; Dkt. 195-5 at 29–30; Dkt. 195-6 at 19.] The parties dispute whether the image is called "Anime the Pirate King Baseball Cap Adjustable Embroidered Cosplay Snap Cap" (as Plaintiff refers to it) or the "red cloud image" (as Yiwu Wenzan refers to it), but this labelling dispute is immaterial. [Dkt. 215, ¶ 30.] Jing Zhu wrote the product description for the listing. [Dkt. 215, ¶ 31.] Neither Yiwu Wenzan nor Jing Zhu have any agreement with Plaintiff to sell NARUTO-branded products. [*Id.*, ¶ 27.]

It's undisputed that Jing Zhu conducted no research to determine whether the products listed on Yiwu Wenzan's website are infringing anyone's copyrights or trademarks. [*Id.*, ¶¶ 33–34.] Jing Zhu also concedes that she does not verify whether the products being shipped from her website are counterfeit. [*Id.*, ¶ 35.]

## II. Procedural History

Prior to filing this lawsuit, Plaintiff placed an order on Alibaba for one of Yiwu Wenzan's black baseball hats with a red cloud image. [Dkt. 212-1 at 1 (sales receipt for Plaintiff's order ending in xx35011 dated June 3, 2024; Dkt. 212-2 at 1 (Alibaba sales history).] The product description listed the hat as "Anime The Pirate King Baseball Cap Adjustable Embroidered Cosplay Snap cap." [Dkt. 212-1 at 1; Dkt. 213, ¶ 17.] It's undisputed that the product Yiwu Wenzan actually shipped to Plaintiff was a different hat—one featuring a green California logo on the crown. [*Id.*, ¶ 18.] The delivered hat contained no NARUTO-related imagery, no red cloud image, and no allegedly infringing content whatsoever. [*Id.*, ¶ 19.]

After filing its complaint, Plaintiff filed a motion for electronic service and a motion for a temporary restraining order. The court granted both requests. [Dkts. 32, 33.] Yiwu Wenzan appeared in the case and filed a responsive pleading entitled "answer/motion to dismiss." [Dkt. 93.] Among other things, the filing stated that the court "lack[s] personal jurisdiction over Defendant and therefore the venue is improper [under] Rule 12(b)(2)." [Dkt. 93 at 4.] The filing also challenged "defective service," arguing Yiwu Wenzan had not been properly served within the meaning of Federal Rule of Civil Procedure 4. [*Id.* at 2.]

The court first treated Yiwu Wenzan's filing as a motion to dismiss and ordered briefing. [Dkt. 99.] It later denied the motion to dismiss, concluding, among other things, that Plaintiff had established a prima facie showing of specific personal jurisdiction over Yiwu Wenzan based on the order Plaintiff placed in June 2024. [Dkt. 103 (citing dkt. 101-2 at 6–7.)] It also concluded that service was proper because the court permitted service on all defendants by alternative means under Federal Rule of Civil Procedure 4(f)(3). [*Id.* at 1.] Finally, the court said that Yiwu Wenzan's filing, to the extent it was also intended to be an answer, could stand. The parties proceeded with fact discovery.

3

In the months that followed, Yiwu Wenzan filed several motions to modify the asset restraint, including based on its argument that there had been $0 in revenue from sales of the allegedly infringing products. [Dkts. 112, 131, 135, 190.] The court reduced the amount of restrained funds once, *see* dkt. 119, but declined to reduce it further despite multiple requests. After fact discovery concluded, both parties filed motions for summary judgment.

## III.    Personal Jurisdiction

In its motion for summary judgment, Yiwu Wenzan argues that "Plaintiff lacks standing to bring the infringement action," and that it "[n]ever sold a single piece of 'red cloud image' cap." [Dkt. 203 at 2, 5.] As before, Yiwu Wenzan argues that the hat that was actually delivered to Plaintiff bore no NARUTO-related imagery. [*Id.*; Dkt. 208 at 7 (arguing that in response to Plaintiff's June 3, 2024 purchase order, Yiwu Wenzan shipped a California hat, not a product containing the "red cloud" image.)] All now agree that this fact is undisputed.

Generally speaking, "summary judgment is an inappropriate vehicle for raising a question concerning the court's personal jurisdiction." *Li Gear, Inc. v. Kerr Mach. Co.*, 2017 WL 432931, at *2 (N.D. Ill. Feb. 1, 2017). Instead, a motion raising lack of personal jurisdiction should be considered a motion to dismiss under Rule 12(b)(2). *Id.* So while styled as a motion for summary judgment, the court considers Yiwu Wenzan's motion under Rule 12(b) using that standard of review. *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F. Supp. 3d 881, 887 (N.D. Ill. 2020).

### 1.    Waiver

Plaintiff argues that Yiwu Wenzan waived any challenge to personal jurisdiction (and service) through its conduct in this litigation. [Dkt. 222 at 8.] A defendant may waive its personal jurisdiction defense "if a defendant gives a plaintiff a reasonable expectation that it will defend the suit on the merits or where he causes the court to go to some effort that would be wasted if personal jurisdiction is subsequently found lacking." *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016).

There's no dispute that Yiwu Wenzan raised personal jurisdiction as a defense in its answer. [Dkt. 222 at 8.] In its "answer/motion to dismiss," Yiwu Wenzan maintained the court lacked personal jurisdiction over it "and therefore the venue is improper [under] Rule 12(b)(2)." [Dkt. 93 at 4.] Specifically, Yiwu Wenzan denied selling any NARUTO counterfeit products to Illinois residents, asserted that Plaintiff "purchased a baseball cap with a logo California, and argued that the only connection to Illinois was a single sale of a generic product to Plaintiff with a California logo. [Dkt. 93 at 5 (making these arguments and citing *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022)).] Plaintiff disagreed, arguing that Yiwu Wenzan purposefully availed itself of doing business in Illinois by selling an infringing NARUTO product to an address within the court's jurisdiction. [Dkt. 101 at 9.] In

4

light of the June 2024 order Plaintiff placed on Alibaba prior to filing suit, the court denied the motion. [Dkt. 103.]

From this, it's clear that Yiwu Wenzan raised its personal jurisdiction defense (and its "defective service" defense) in its responsive pleading and also by motion under Rule 12(b). Rule 12(h)(1) is clear that a defendant does not waive, and therefore necessarily preserves, a personal jurisdiction defense by either raising it in a Rule 12(b)(2) motion or including it in a timely-filed responsive pleading. So, under a plain reading of Rule 12, Yiwu Wenzan properly preserved its personal jurisdiction defense by asserting it in a timely-filed answer.

Plaintiff argues the court should nonetheless find waiver of the personal jurisdiction defense by virtue of the number of pleadings, motions and other materials Yiwu Wenzan has filed over the past year and a half. These filings, Plaintiff says, gave it the reasonable expectation that Yiwu Wenzan was defending the case on the merits and submitting to the court's jurisdiction. [Dkt. 222 at 8.]

On this record, the court would be hard-pressed to conclude that Yiwu Wenzan failed to make clear that its intent to pursue a personal jurisdiction defense. After the motion to dismiss was denied, Yiwu Wenzan continued with filings aimed at personal jurisdiction. For instance, Jing Zhu filed several declarations in support of numerous motions to modify the asset restraint. [Dkt. 112–13 (taking the position that Yiwu Wenzan's store has no "red cloud" logo baseball caps, that the only option was to purchase one of three colors options with "California" logo, and explaining that an earlier "test buy" from March 2024 had been cancelled); Dkts. 121, 123, 124 (renewing a request to further reduce the asset restraint in light of the California logo); Dkt. 133 (affidavit from Liyi Lei of Alibaba stating that there was only one sale of the product).] These submissions gave Plaintiff no reasonable expectation that Yiwu Wenzan was submitting to this court's jurisdiction. Quite the opposite, as they "again reiterated that it planned to contest the personal-jurisdiction issue." *Mold-A-Rama Inc.*, 451 F. Supp. 3d at 888.

It's true that other circumstances present a closer call for waiver. The parties hotly contested a number of fact discovery issues over a lengthy period of time. At one point, Yiwu Wenzan retained counsel and the parties were negotiating a potential settlement that later fell through and counsel withdrew. [Dkt. 164, 166.] But given Yiwu Wenzan's consistent position that the court lacks personal jurisdiction over it, Yiwu Wenzan's conduct did not give Plaintiff a reasonable expectation that it waived its personal jurisdiction challenge and would only litigate the case on the merits. *Greene v. Karpeles*, 2019 WL 1125796, at *4 (N.D. Ill. Mar. 12, 2019) (finding that the defendant did not waive his personal-jurisdiction defense where he took the "consistent position that the court lacks personal jurisdiction over him").

Lastly, citing the doctrine of law of the case, Plaintiff argues that the court has already denied the motion to dismiss on personal jurisdiction grounds and Yiwu

Wenzan "cannot simply re-file the same objection on the same record." [Dkt. 222 at 11.]

"The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 701 (7th Cir. 2024). "The doctrine is discretionary, 'not an inflexible dictate.'" *Id.* (quoting *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018)).

Typically, courts will only depart from an earlier decision because of a "good reason" or "unusual circumstances." *Id.* That might include (1) substantial new evidence introduced after the first review, (2) an intervening change in the law, and (3) a clearly erroneous decision. *Id.* The "duty of adherence is less rigid if the ruling in question was by the same court." *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024) (cleaned up). In those circumstances, "the doctrine does not apply if the court is 'convinced that its prior decision is clearly erroneous and would work a manifest injustice.'" *Id.*

Here, Yiwu Wenzan is not objecting on the same record. At the motion to dismiss stage, Yiwu Wenzan argued that it sold only a California hat, *see* dkt. 93 at 1, 4–5, and Plaintiff pointed to the June 2024 sales receipt to show that the product that shipped to Illinois was a hat with the allegedly infringing design. [Dkt. 101-2 at 6–7.] This dispute was not proper for resolution at the dismissal stage, but now that discovery has ended and the relevant fact is undisputed, the court declines to apply the law of the case doctrine.

### 2. Merits

"In a case involving federal question jurisdiction, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *NBA Props., Inc.*, 46 F.4th at 620. The Copyright Act gives the court subject matter jurisdiction over the claims, but it does not grant personal jurisdiction, so the court looks to Illinois law to determine whether it can exercise personal jurisdiction over Yiwu Wenzan. *Id.* Illinois's long-arm statute provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2-209(c).

For a defendant to be subject to specific personal jurisdiction under the Due Process Clause, three requirements must be met: (i) the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state; (ii) the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities; and (iii) the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *NBA Props.*, 46 F.4th at 623.

In the context of Schedule A litigation, a defendant's operation of an online store accessible in the forum state, combined with completed sales in the forum state, has been found sufficient to subject that defendant to personal jurisdiction. *Id.* at 623–27. When assessing a defendant's online contacts with a forum, merely "operating a website, even a highly interactive website, that is accessible from, but does not target, the forum state" is not enough to sustain jurisdiction. *Liu v. Monthly*, 170 F.4th 1090, 1093 (7th Cir. 2026) (citing *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020)).

Turning first to purposeful availment, this requirement may be shown by "evidence that the defendant's actions, even if initiated outside of the forum state, nevertheless were directed at the forum state." *Curry*, 949 F.3d at 398. In *Curry*, the defendant's actions could be described as purposefully directed where it "created an interactive website and explicitly provided that Illinois residents could purchase its products through that website," "arranged for the sale of its products through third-party websites," "sent written confirmation to the Illinois customers acknowledging their sale and including their Illinois shipping address," and then "shipped [the product] to its customers who were in Illinois." 949 F.3d at 399.

The court agrees that Plaintiff has shown that Yiwu Wenzan directed its actions at Illinois through its Alibaba page, arranged for the sale of a hat through Alibaba, and provided written confirmation to Plaintiff acknowledging the sale with an Illinois shipping address. What's missing is evidence that Yiwu Wenzan then shipped the allegedly infringing product to a customer who was in Illinois.

This dovetails with the relatedness requirement. As the Seventh Circuit put it in *Curry*, there must be a "connection between the forum and the specific claims at issue." *Curry*, 949 F.3d at 400. And "not just any contacts will do: For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (emphasis added) ("Not only did [plaintiff] fail to link the few sales to [defendant's] litigation-specific activity, but even if it did, it is unlikely that those few sales alone, without some evidence linking them to the allegedly tortious activity, would make jurisdiction proper."); *Runze v. Marriott Int'l Inc.*, 2020 WL 7027717, at *2 (N.D. Ill. Nov. 29, 2020) ("'[S]pecific' jurisdiction only allows courts to hear lawsuits in which the defendant's contacts with the forum state specifically give rise to the plaintiff's claims." (citing *Curry*, 949 F.3d at 395)).

Here, Plaintiff does not dispute that Yiwu Wenzan's single contact with Illinois does not involve a suit-related product. It argues instead that mistakenly shipping the wrong product is immaterial, urging the court to conclude that it's enough that Yiwu Wenzan agreed to fulfill an order and accepted payment for an alleged NARUTO-infringing product. [Dkt. 212 at 8–10 (arguing that "courts in this jurisdiction do not require receipt of an item, or the correct item, to establish personal

7

jurisdiction over defendant.")] But it cites no authority for this proposition and the court's research found none.

Perhaps recognizing this, Plaintiff also explains that its investigator "examined the images of the NARUTO baseball cap listed for sale by Defendant's Internet Store and determined the product was not licensed or authorized by Plaintiff and therefore is counterfeit." [Dkt. 215, ¶ 21.] But as the Seventh Circuit explained in *Liu*, evidence showing "only that it was possible to order the defendants' products and have them shipped to Illinois," is not sufficient to show that sales took place. *Liu*, 170 F.4th at 1093. So, an investigator viewing products on an Alibaba page is no different than offering screenshots of infringing products offered for sale to forum residents. It still does not "prove actual sales in Illinois." *Id*. at 1094.

For these reasons, dismissal for lack of jurisdiction is warranted.[3]

## IV.   Proper Service

Yiwu Wenzan's "answer/motion to dismiss" also raised a "defective service" defense under Federal Rule of Civil Procedure 4 as grounds for dismissal. [Dkt. 93 at 2.] In its order denying dismissal, the court explained that it had authorized service by electronic means under Federal Rule of Civil Procedure 4(f)(3), so dismissal of the case on those grounds was not warranted. [Dkt. 103 at 1.]

After briefing on summary judgment concluded, the Seventh Circuit decided *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.,* 177 F.4th 793 (7th Cir. 2026). *Kangol* held that the Hague Service Convention prohibits service by email in China. In its supplemental brief, Plaintiff argues that (a) the Hague Service Convention does not apply because Yiwu Wenzan's address was not known at the time of service; and (b) the court properly authorized service by email under Rule 4(f)(3). [Dkt. 222 at 2–7.] The court cannot agree.[4]

As a threshold matter, Article I of the Convention states that it "shall not apply where the address of the person to be served with the document is not known." Hague Service Convention art. 1, 20 U.S.T. at 362. Before courts will accept that a defendant's address is unknown, the plaintiff must make reasonably diligent efforts to ascertain and verify the defendant's mailing address. *Kangol*, 177 F.4th at 799.

---

[3]   The result of the court finding a lack of personal jurisdiction is dismissal of the case. Without personal jurisdiction, it lacks authority to address the merits of this dispute. *Li Gear, Inc.*, 2017 WL 432931, at *2 (explaining that "a court that lacks personal or subject-matter jurisdiction does not have power to enter any kind of judgment—summary or otherwise.")

[4]   Plaintiff renews its waiver and law of the case arguments as reasons why the court should not revisit its prior ruling. But *Kangol* is an intervening change to Seventh Circuit case law. *Pittman,* 108 F.4th at 572. And for the reasons already discussed, the court cannot conclude that Yiwu Wenzan waived its objection to improper service within the meaning of Rule 12(h)(1). *See Kangol*, 177 F.4th at 797 (citing *Hedeen Int'l, LLC*, 811 F.3d at 906)).

Here, Plaintiff cannot seriously argue that Yiwu Wenzan's address was not known at the time Plaintiff moved for alternative service in September 2024. The June 2024 sales receipt lists Yiwu Wenzan's registered company address as Zhejiang, China, as Yiwu Wenzan points out. [Dkt. 212-1 at 2.] It's true that, after filing suit, Plaintiff served Alibaba with a subpoena requesting Yiwu Wenzan's contact information and that Plaintiff only received an account number, email address, and account balance for Yiwu Wenzan. [Dkt. 222-1, ¶¶ 3–4.] But this doesn't change the fact that the earlier sales receipt listed an address in China, or that Plaintiff affirmatively represented to the court in October 2024 that Yiwu Wenzan was located in China. [Dkt. 31 at 22 (listing "seller's location" as China).] Nor does Plaintiff seriously suggest that it made reasonably diligent efforts to ascertain and verify Yiwu Wenzan's mailing addresses before deeming it unknown. *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1391 (S.D.N.Y. 2022) (reasonable diligence standard met where a plaintiff searched websites associated with the defendant's domain names, completed internet searches, and attempted to visit the defendant's domicile in person) (citing *Microsoft Corp. v. Does 1-2*, 2021 WL 4755518, at *3 (E.D.N.Y. May 28, 2021)).

Finally, Plaintiff argues that service was otherwise proper under Rule 4(f)(3). [Dkt. 222 at 5.] Rule 4(f)(3) allows litigants in the United States serve an entity outside of the United States "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). But service by a method that is prohibited by international agreement is also impermissible under Rule 4(f)(3). *Kangol*, 177 F.4th at 800 ("The Convention's text and structure demonstrate that, where it applies, it provides the permissible means of service and excludes all others. And because no provision of the Convention authorizes service by email in China, such service violates the Convention and Rule 4(f)(3)."); see also *Smart Study Co.*, 620 F. Supp. 3d at 1392.

The cases Plaintiff cites simply do not grapple with the holding in *Kangol*, which is binding on this court in any event. For this alternative reason, dismissal is proper.

## VI.    Conclusion

For the foregoing reasons, the motions for summary judgment are denied. The case is dismissed without prejudice for lack of personal jurisdiction.

Enter: 24-cv-8964
Date: June 29, 2026

_____
Lindsay C. Jenkins

9